# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

BITCO GENERAL INSURANCE )
CORPORATION, )
 )
      Plaintiff, )
 )
v. ) Case No. CIV-14-1220-D
 )
MARJO OPERATING COMPANY, )
INC.; KIM F. ZIEGELGRUBER, )
Trustee of the Kim Frank )
Ziegelgruber Revocable Trust )
Dated August 23, 2012, )
 )
      Defendants. )

## <u>O R D E R</u>

Before the Court are cross-motions for summary judgment filed by Plaintiff BITCO General Insurance Corporation ("BITCO") [Doc. No. 25] and Defendant Marjo Operating Company, Inc. ("Marjo") [Doc. No. 23].[1] The matter is fully briefed and at issue.

## BACKGROUND

**I.** *The Pollution Policy*

BITCO issued a Pollution Liability Policy to Marjo (the Pollution Policy) with effective dates of May 1, 2013 to May 1, 2014, and a retroactive date of May 1, 2008.

---

[1] In lieu of filing a separate motion for summary judgment, Defendant Kim F. Ziegelgruber has submitted a brief response in support of Marjo's motion [Doc. No. 27].

Under the Pollution Policy, BITCO agreed to defend and/or provide pollution liability coverage with Each Occurrence and Aggregate limits of $1,000,000 and a deductible amount of $2,000 for "property damage" caused by a "pollution incident." Under the policy, "property damage" was defined as, among other things, "[p]hysical injury to, destruction or contamination of tangible property, including all resulting loss of use of that property[.]" A "pollution incident" was an "emission, discharge release or escape of 'pollutants' into or upon land, the atmosphere, or any watercourse or body of water[.]"[2] The Pollution Policy stated BITCO's right and duty to defend ended when the applicable policy limit was exhausted upon the payment of "judgments, settlements, or 'clean up costs.'"

## II.   *The Umbrella Policy*

In addition to the Pollution Policy, BITCO issued a Commercial Umbrella Policy ("Umbrella Policy") to Marjo with effective dates of May 1, 2013 to May 1, 2014, which provided a Policy Aggregate Limit of $5,000,000 and a Self-Insured Retention of $10,000. Under the Umbrella Policy, BITCO promised to reimburse Marjo "the 'ultimate net loss' in excess of the 'retained limit' because of 'bodily injury' or 'property damage' caused by an 'occurrence' which takes place during the

---

[2]Under the Pollution Policy, the term "pollutants" included any "solid, liquid, gaseous or thermal irritant or contaminant, including . . . chemicals and waste."

-2-

policy period and in the 'coverage territory.'"[3] BITCO also promised "to defend any 'claims' or 'suits' which are covered by [the Umbrella Policy], but not covered by any 'underlying insurance[,]' [and] such 'claims' or 'suits' if the applicable limit of 'underlying insurance' is used up."

Similar to the Pollution Policy, the Umbrella Policy defined "property damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property." The Umbrella Policy also contained a Pollution Exclusion, which stated in pertinent part:

> It is agreed that this policy does not apply to:
>
> (1) "Bodily injury," "property damage" or "personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time;
>
> * * *
>
> This exclusion does not apply if insurance for such "bodily injury," "property damage" or "personal and advertising injury" is provided by "underlying insurance" at the limits shown in the schedule of "underlying insurance." Coverage for such "bodily injury," "property damage" or "personal and advertising injury" is subject to the same limitations as the "underlying insurance."

To this end, "underlying insurance" was defined as:

---

[3] Under the Umbrella Policy, an "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions[.]"

> [T]he coverage(s) afforded under insurance policies designated in the schedule of "underlying insurance" on the Declarations Page of this policy. "Underlying insurance" also includes any other insurance available to the insured, except such insurance as may be purchased to apply specifically in excess of this policy.

The Pollution Policy is not listed on the Declarations Page of the Umbrella Policy.

### III.   *The Saltwater Flow Line Leak Incident*

On May 7, 2013, a saltwater flow line leak was discovered on a horizontal well owned and/or operated by Marjo. The leak contaminated real property owned by two landowners, one of whom is Defendant Ziegelgruber. Marjo contacted the Oklahoma Corporation Commission (OCC) to report the leak and worked with the OCC to identify the extent of damage to the property and determine a reclamation process and remediation plan, which was implemented. Marjo notified BITCO of the claims resulting from the leak, and BITCO acknowledged coverage under the Pollution Policy. BITCO reimbursed Marjo for "clean up costs" totaling $1,000,000. As a result, BITCO's payments to Marjo exhausted the Pollution Policy's aggregate limit and BITCO notified Marjo that the limit had been reached.

Ziegelgruber subsequently filed suit in Logan County District Court (hereinafter the *Ziegelgruber* lawsuit), alleging Marjo tortiously allowed the saltwater and/or other deleterious substances to leak onto Ziegelgruber's property, rendering it unfit to grow living things and thereby constituting a nuisance. BITCO agreed to provide a defense,

subject to a reservation of rights that included the right to withdraw its defense and seek reimbursement of costs if it was determined BITCO owed no duty to defend Marjo for the claims asserted in the lawsuit.

BITCO seeks a determination that since it has paid the applicable policy limit under the Pollution Policy, it has no further obligation to defend or indemnify Marjo with respect to the claims asserted in the *Ziegelgruber* lawsuit. BITCO also seeks a declaration of whether the Umbrella Policy applies to the *Ziegelgruber* lawsuit. In response, Marjo seeks a judgment that the Umbrella Policy was intended by the parties to cover, and does cover, the claims asserted in the *Ziegelgruber* lawsuit.

## STANDARD OF DECISION

"Summary judgment is proper if, viewing the evidence in the light most favorable to the non-moving party, there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Bonidy v. U.S. Postal Service*, 790 F.3d 1121, 1124 (10th Cir. 2015) (citing *Peterson v. Martinez*, 707 F.3d 1197, 1207 (10th Cir. 2013)). When reviewing cross-motions for summary judgment, the Court must evaluate each motion on its own merits, with all inferences construed in favor of the party against whom the motion under consideration is made. *Pirkheim v. First Unum Life Ins.*, 229 F.3d 1008, 1010 (10th Cir. 2000). When the parties file cross motions for summary judgment, the Court is entitled to assume no evidence

needs to be considered other than that filed by the parties. *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000).

An issue is "genuine" if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). An issue of fact is "material" if under the substantive law it is essential to the proper disposition of the claim. *Id*. Unsupported conclusory allegations do not create an issue of fact. *Finstuen v. Crutcher*, 496 F.3d 1139, 1144 (10th Cir. 2007). "If a party that would bear the burden of persuasion at trial does not come forward with sufficient evidence on an essential element of its prima facie case, all issues concerning all other elements of the claim and any defenses become immaterial." *Adler*, 144 F.3d at 670 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

Once the moving party has met its burden, the burden shifts to the nonmoving party to present sufficient evidence in specific, factual form to establish a genuine factual dispute. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir.1991). The nonmoving party may not rest upon the mere allegations or denials of its pleadings. Rather, it must go beyond the pleadings and establish, through admissible evidence, there is a genuine issue of material fact that must be resolved by the trier of fact. *Salehpoor v. Shahinpoor*, 358 F.3d 782, 786 (10th Cir. 2004).

## DISCUSSION

The issues before the Court are to be resolved under Oklahoma state law. *Universal Underwriters Ins. Co. v. Winton*, 818 F.3d 1103, 1105-06 (10th Cir. 2016) (federal court applies law of forum state in diversity actions) (citing *Automax Hyundai S., LLC v. Zurich Am. Ins. Co.*, 720 F.3d 798, 804 (10th Cir. 2013)). Oklahoma's rules of construction for insurance policies are identical to those for contracts:

> An insurance policy is a contract. The rules of construction and analysis applicable to contracts govern equally insurance policies. The primary goal of contract interpretation is to determine and give effect to the intention of the parties at the time the contract was made. In arriving at the parties' intent, the terms of the instrument are to be given their plain and ordinary meaning. Where the language of a contract is clear and unambiguous on its face, that which stands expressed within its four corners must be given effect. A contract should receive a construction that makes it reasonable, lawful, definite and capable of being carried into effect if it can be done without violating the intent of the parties.

*May v. Mid-Century Ins. Co.*, 2006 OK 100, ¶ 22, 151 P.3d 132, 140 (citations omitted); *see also State Ins. Fund v. Ace Transp. Inc.*, 195 F.3d 561, 564 (10th Cir. 1999).[4] In addition, Oklahoma's statutory rules of contract construction establish that a contract, such as an insurance policy, is to be taken as a whole, giving effect to every part if reasonably practicable, each clause helping to interpret the others (15 OKLA.

---

[4] The parties do not contend the policy language is ambiguous, but they do urge different conclusions based on their respective (and conflicting) interpretations of the relevant provisions.

STAT. § 157); and a contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates (15 OKLA. STAT. § 163). Where multiple contracts are made as part of one transaction, they are to be read together, and each will be construed with reference to the other, even though the contracts may not reference each other or were executed at different times. *In re Estate of Carlson*, 2016 OK 6, ¶ 14, 367 P.3d 486, 491 n. 1; *see also* 15 OKLA. STAT. § 158 ("[s]everal contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together."). The court should not focus on a particular clause or take language out of context. *Shawnee Hosp. Auth. v. Dow Constr., Inc.*, 1990 OK 137, ¶ 6, 812 P.2d 1351, 1353.

Lastly, under Oklahoma law, "a contract of insurance ordinarily must be construed liberally in favor of the insured and strictly against the insurer where there exists any ambiguity, doubt or uncertainty as to its meaning. . . . An insurance policy's words of exclusion are to be narrowly viewed." *An-son Corp. v. Holland-America Ins. Co.*, 767 F.2d 700, 703 (10th Cir. 1985) (citations omitted).

It is undisputed that BITCO exhausted the $1 million aggregate limit for reimbursement of "clean up costs" pursuant to the Pollution Policy. Thus, at issue is whether the Umbrella Policy applies to the *Ziegelgruber* lawsuit and provides additional coverage for claims made in that litigation. In the Court's view, coverage

is available under the plain language of the Umbrella Policy, and is not excluded by that policy's Pollution Exclusion, as the Pollution Policy constitutes "underlying insurance" as that term is defined in the Umbrella Policy.

As noted, "underlying insurance" has a two-pronged definition. It encompasses either (1) coverage afforded under the policies designated on the Schedule of Underlying Insurance located on the Umbrella Policy's declarations page or (2) *any other* insurance that was available to the insured, with limited exceptions not relevant here. Both policies provided coverage for "property damage" due to incidents such as the leak. Although the Pollution Policy is not designated on the Schedule of Underlying Insurance, it nonetheless constituted "other insurance that was available to [Marjo]" at the time of the insurable incident. Reading both policies fairly, and applying a narrow reading to all exclusionary terms, it is evident the parties intended for BITCO to defend Marjo under the Umbrella Policy against any claim covered by the Pollution Policy once Marjo exhausted coverage.

Accordingly, the Court finds BITCO is contractually obligated under the Umbrella Policy to provide a defense and any necessary additional coverage to Marjo for claims asserted in the *Ziegelgruber* lawsuit.[5]

---

[5]Although BITCO alludes to the possible application of another policy provision which it asserts precludes coverage – the Umbrella Policy's Oil Industry Limitation Endorsement (*see, e.g.*, Pl. Resp. to Def. Mot. for Summary Judgment at

## CONCLUSION

Defendant Marjo Operating Company, Inc.'s Motion for Summary Judgment [Doc. No. 23] is **GRANTED** as set forth herein. For the same reasons, Plaintiff BITCO General Insurance Corporation's Motion for Summary Judgment [Doc. No. 25] is **DENIED**. A judgment shall be entered forthwith.

**IT IS SO ORDERED** this 15th day of July, 2016.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE

---

5, n. 2 [Doc. No. 29]) – the argument is not adequately developed by BITCO and need not be addressed here. *See United States v. Hardman*, 297 F.3d 1116, 1131 (10th Cir. 2002) ("Arguments raised in a perfunctory manner, such as in a footnote, are waived.").